

**NUMBER 13-10-00226-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARILYN MCKEITHAN,**                           **Appellant,**

**v.**

**BRADFORD M. CONDIT,**                            **Appellee.**

---

**On appeal from the 117th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

Marilyn McKeithan appeals a final judgment awarding Bradford M. Condit $37,584 in damages for breach of contract, $20,000 in exemplary damages for fraud, $23,033 in attorney's fees, and $299 in court costs.  In four issues, McKeithan argues

the following:  (1) the evidence is insufficient to support a judgment for fraud; (2) Condit is not entitled to recover both breach of contract damages and fraud damages, in violation of the one satisfaction rule; (3) the evidence is insufficient to support the damages award for breach of contract in the amount of $37,584; and (4) the evidence is insufficient to support the award of attorney's fees in the amount of $23,033.

For the reasons set forth below, we reverse the trial court's judgment in part. *See* Tex. R. App. P. 43.2(d).  Specifically, we reverse the trial court's award of exemplary damages in the amount of $20,000 because we conclude that the evidence is insufficient to prove that McKeithan committed fraud by making a material representation that was false.  In addition, we reverse the award of attorney's fees in the amount of $23,033 because we conclude that the evidence is insufficient to prove that $23,033 was reasonable and necessary.  We remand for a new trial on the fraud claim and request for attorney's fees. *See id.*  In all other respects, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

## I. BACKGROUND

In late 2008, McKeithan hired Condit to assist in defending her in a lawsuit arising out of a foreclosure and suit on a promissory note.  After losing at trial, McKeithan hired two new lawyers.  In May 2009, Condit withdrew from the case.  Then, he filed the instant suit against McKeithan for unpaid attorney's fees.  Condit later amended his suit to add a cause of action for fraud, alleging in relevant part as follows:

> Plaintiff provided goods and services by way of legal representation to Defendant.  After 30 days written demand, Defendant has failed to pay the debt of $47,320.00.  Additionally, Defendant committed fraud when she falsely represented to Plaintiff that she would pay for his services and expenses that he advanced, when in fact she had no intention of doing so. Plaintiff would not have provided the services he did but for Defendant's

2

misrepresentations which was a producing and/or proximate cause of Plaintiff's damages. When such representations were made they were made with the intent to induce Plaintiff into providing legal services. Such conduct entitles Plaintiff to recover exemplary damages.

On June 1, 2009, McKeithan filed a pro se answer in the nature of a general denial. She subsequently amended her pleadings to add causes of action against Condit including breach of fiduciary duties. On December 31, 2009, Condit filed a motion for sanctions, requesting that the trial court prohibit McKeithan from testifying at trial. On January 8, 2010, the trial court held a hearing on the motion during which the court remarked as follows:

> [McKeithan] failed to respond to discovery, failed to appear at several noticed depositions, failed to appear at the court-ordered deposition and failed to appear for mediations ordered by this Court, so I will strike her pleadings . . . and . . . [she] will not be allowed to present testimony - - not be allowed to present evidence . . . . It will be a very short trial.

The court did not subsequently enter an order striking McKeithan's pleadings.

On August 19, 2010, the case was called for trial. McKeithan did not appear.[1] The court held a bench trial. Condit was the only witness. He testified in relevant part that he "agreed to continue the [legal] representation of" McKeithan based on her representation "that she did not have the funds to pay" his attorney's fees in advance in one "lump sum" but would instead pay "on a monthly basis." He testified that he "subsequently . . . found out that she [had] lied to . . . [him]." He testified that he later "learned that in fact she had [subsequently] paid . . . [a second attorney] a lump sum in excess of $20,000." He also testified that she paid a third attorney an amount "in

---

[1] A post-answer default "constitutes neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer.'" *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979).

3

excess of $8,000 in a lump sum." "Needless to say," he testified, "I was the victim of her fraud is my allegation[] in the pleadings and what I'm testifying to the Court today. I would not have represented Ms. McKeithan, had I known the true facts about what she was telling me." According to Condit, he "expended in excess of 200 hours in the defense of that case [on behalf of McKeithan,] . . . which comes out to, at $185 an hour, . . . $37,584."

After testifying, Condit told the trial court the following:

[A]nd I'm also asking, Your Honor, for a directed verdict on her counterclaims for breach of fiduciary duties, common law fraud, unconscionable action or course of action, and any causation of any alleged damages that is being alleged, loss of use of funds, loss of opportunity costs, loss of credit and damage to credit reputation, mental anguish, or any conduct that would support an exemplary damages award. And so, I ask the Court for a directed verdict at this time . . . for those causes of action.

Thereafter, the trial court said the following:

[T]here is absolutely no evidence before the Court with regards to any of the Defendant's counterclaims, and I'm going to grant a directed verdict against any and all direct or implied causes of action alleged by the Defendant in the pleadings.

In its final judgment, the trial court awarded the amounts set forth above and then stated in relevant part as follows:

The court directs a verdict on Counter-Plaintiff Marilyn McKeithan's pled causes of action, those being:

    a. breach of fiduciary duties;

    b. common law fraud;

    c. unconscionable action or course of action;

    d. any causation of any alleged damages, i.e,

        1. Loss of use of funds

4

2. Loss of opportunity costs
3. Loss of credit and damage to credit reputation
4. Mental anguish;

     e. conduct that would support exemplary damages;

and the court enters a take nothing judgment.

McKeithan now appeals the trial court's judgment to this Court by four issues.[2]

## II. FRAUD

In her first issue, McKeithan contends that the evidence is legally and factually insufficient to prove fraud. However, Condit argues that McKeithan cannot raise her challenges to the legal and factual sufficiency of the evidence in this appeal for three different reasons: (1) this situation amounted to a no-answer default judgment and therefore Condit's pleadings alone will support the judgment; (2) McKeithan waived the challenges by failing to include them in her motion for new trial; and (3) McKeithan failed to preserve error in the sufficiency of the evidence by failing to make a timely and specific objection. Accordingly, we will address Condit's arguments before proceeding to decide the merits of McKeithan's challenges to the legal and factual sufficiency of the evidence to support a judgment on Condit's fraud claim. *See* TEX. R. APP. P. 47.1.

### A. Death Penalty Sanctions, Waiver, and Preservation of Error

### 1. Death Penalty Sanctions

First, Condit argues that because the trial court entered death penalty sanctions, McKeithan is barred from challenging the sufficiency of the evidence on appeal. *See*

---

[2] McKeithan filed a motion for new trial, which was denied. She then filed a timely notice of appeal. Shortly thereafter, we were required to abate the appeal due to McKeithan's filing for bankruptcy; however, the bankruptcy is no longer pending. Accordingly, we reinstate the appeal and proceed to the merits.

*Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012) ("[A] death-penalty sanction can[] be used to adjudicate the merits of claims or defenses . . . [if] the offending party's [mis]conduct during discovery justifies a presumption that its claims or defenses lack merit."). We recognize that the trial judge did, in fact, state that she was striking McKeithan's pleadings; however, as set forth below, we conclude that the trial court's oral pronouncement is inconsistent with the manner in which the trial court conducted the trial and also inconsistent with the final judgment the court rendered in favor of Condit. *See In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A written judgment or order controls over a trial court's oral pronouncement.").

"When a trial court strikes a defendant's answer as a discovery sanction, the resulting default is technically post-answer, but it is also . . . similar to a no-answer default judgment." *Paradigm Oil*, 372 S.W.3d at 183–84 ("[D]efault judgments are not all alike[,] and . . . different rules apply in different circumstances."). "[T]he non-answering party in a no-answer default judgment is said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts." *Id.* at 183.

In this case, however, the trial court did not render judgment on the pleadings. *See id.* Instead, the judge required Condit to offer evidence and prove all aspects of his claims. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (per curiam) ("If the defendant files an answer, as in this case, a trial court may not render judgment on the pleadings and the plaintiff is required to offer evidence and prove all

6

aspects of its claim."). Furthermore, the final judgment recognized that McKeithan's pleadings were still pending at the time of trial by identifying each of the specific causes of action pled by McKeithan and then ordering that she take nothing by her claims based on a directed verdict that Condit requested at trial. Based on the foregoing, we conclude that the trial court did not strike McKeithan's pleadings, and she may challenge the legal sufficiency of the evidence in this appeal, as in other cases involving a post-answer default. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979) (holding that a post-answer default "constitutes neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer"). Accordingly, we reject Condit's first argument because the trial court did not impose death penalty sanctions.

**2. Waiver**

Second, Condit argues that McKeithan waived these issues by failing to include them in her motion for new trial. Rule 324 of the Texas Rules of Civil Procedure provides in relevant part as follows:

> (a) **Motion for New Trial Not Required.** A point in a motion for new trial is not a prerequisite to a complaint on appeal in either a jury or a nonjury case, except as provided in subdivision (b).
>
> (b) **Motion for New Trial Required.** A point in a motion for new trial is a prerequisite to the following complaints on appeal:
>
>> (1) A complaint on which evidence must be heard such as one of jury misconduct or newly discovered evidence or failure to set aside a judgment by default;
>>
>> (2) A complaint of factual insufficiency of the evidence to support a jury finding;
>>
>> (3) A complaint that a jury finding is against the overwhelming weight of the evidence;

7

(4) A complaint of inadequacy or excessiveness of the damages found by the jury; or

(5) Incurable jury argument if not otherwise ruled on by the trial court.

TEX. R. CIV. P. 324(a)–(b).

McKeithan's challenge to the legal and factual sufficiency of the evidence in this case, involving a bench trial, does not fall within any of the enumerated categories of issues for which a motion for new trial is a prerequisite to raising the issue on appeal. *See id.* Accordingly, we overrule Condit's second argument because failure to include these issues in a motion for new trial does not result in waiver.

**3. Error Preservation**

Finally, Condit argues that McKeithan failed to preserve error in the sufficiency of the evidence by failing to make a timely and specific objection. Rule 33.1 of the Texas Rules of Appellate Procedure provides in relevant part as follows:

(d) **Sufficiency of Evidence Complaints in Nonjury Cases.** In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence - including a complaint that the damages found by the court are excessive or inadequate, as distinguished from a complaint that the trial court erred in refusing to amend a fact finding or to make an additional finding of fact - may be made for the first time on appeal in the complaining party's brief.

TEX. R. APP. P. 33.1(d).

McKeithan's challenge to the legal and factual sufficiency of the evidence in this case involving a bench trial falls directly within the specifically enumerated exception to the error preservation rule. *See id.* Therefore, we overrule Condit's argument that McKeithan may not challenge the sufficiency of the evidence for the first time on appeal.

8

Having addressed and overruled each of Condit's three arguments for why we should not reach the merits of McKeithan's challenges to the legal and factual sufficiency of the evidence in this appeal, we proceed to address the merits of her challenges with regard to Condit's fraud claim.

## B.  Standard of Review

"When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it." *Bryan v. Gordon*, 384 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).  "We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not." *Id.*  "The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review." *Id.*  "The fact finder is the sole judge of witness credibility and the weight to give their testimony." *Id.*

"In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding." *Id.* (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)).  "We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986)).  "We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses." *Id.* "The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment." *Id.* at 913–14.

9

## C. Applicable Law

Fraud consists of six elements:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Under the common law, "an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement." *Formosa Plastics*, 960 S.W.2d at 47.

## D. Discussion

In her first issue, McKeithan contends that the evidence is legally and factually insufficient to prove Condit "was a victim of fraud." *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("[T]he usual view is that mere breach of contract is not fraud and that it may not be evidence of fraud."). Condit testified in relevant part that he "agreed to continue the [legal] representation of" McKeithan based on her representation "that she did not have the funds to pay" his attorney's fees in advance in one "lump sum" but would instead pay "on a monthly basis." He testified that he "subsequently . . . found out that she [had] lied to . . . [him]." He then testified, "Needless to say . . . I was the victim of her fraud is my allegation[] in the pleadings and what I'm testifying to the Court today. I would not have represented Ms. McKeithan, had I known the true facts about what she was telling me."

After quoting the foregoing testimony in her appellate brief, McKeithan argues in relevant part as follows:

> There are two possible ways to interpret the evidence quoted above as a supporting a claim of fraud:  (1) the more likely, that Condit is claiming McKeithan's statement that she could not pay him a lump sum is false, and that she could have paid him a lump sum at the time; or (2) the less likely, that Condit is claiming McKeithan[] did not intend to honor her promise to pay for the work he would do in the future when she promised to do so.  In either case[,] the foregoing evidence is insufficient to prove the existence of a fraud.

With respect to the first possible interpretation, McKeithan argues in relevant part as follows:

> Accepting the evidence quoted above as accurate, it shows McKeithan paid two other lawyers lump sum retainers when she hired them.  What it does not prove is she also had the ability to make such a lump sum payment in December 2008.  The fact McKeithan paid . . . [the other two attorneys] lump sum retainers [roughly six] months afterwards does nothing to prove that she could have done so months previously, in the absence of any evidence showing she did, in fact, have the money available at the time.  The record does not show where McKeithan got this money; abstractly she could have earned it, inherited it or even borrowed it any time after December 2008.  Because Condit has no evidence showing McKeithan had any money to give him in December 2008, his evidence is legally and factually insufficient to prove her statement that she did not was a false statement about an existing fact, and so it is insufficient to prove fraud.

In his appellate brief, Condit agrees that the representation at issue is "[t]hat . . . [McKeithan] could not pay in a lump sum."[3]  He argues that the evidence was sufficient to prove that McKeithan "in fact could pay a lump sum because within a few months of saying she could not pay she paid two other lawyers a lump sum of $28,000.00."

Based on the foregoing, we conclude that the vital fact in this case is whether McKeithan had the ability to pay Condit $37,584 in December 2008.

---

[3]  In his appellate brief, Condit identifies the underlying material representation as being "[t]hat Appellant could not pay in a lump sum."  Condit argues that the evidence showed that the representation was false and that McKeithan "made the representation intending to induce . . . [him] to work for her."

11

We agree with the parties that there was no direct evidence of this vital fact at trial. Instead, the finder of fact determined this fact based on the uncontroverted, circumstantial evidence that McKeithan paid $28,000 to two other attorneys beginning in May or June 2009. As set forth above, McKeithan argues that this constitutes no evidence.

In *City of Keller*, the Texas Supreme Court discussed the standard of review that appellate courts must use in cases involving purely circumstantial evidence. *See City of Keller*, 168 S.W.3d at 813–15. "In such cases, we must view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances." *Id*. at 813–14. "[W]hen the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well." *Id*. at 815. "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *Id*. at 814. The evidence is insufficient "if jurors would have to guess whether a vital fact exists." *Id*.

Here, there are two different inferences that could be drawn from the fact that McKeithan paid two others lawyers $28,000 beginning in May or June 2009: (1) she had $28,000 in December 2008; or (2) she did not have $28,000 in December 2008. Looking at the evidence as a whole, there is nothing that makes it more likely than not that she had the money in December 2008. *See id*. There is nothing in the record to make one inference more reasonable or compelling than the other. *See id.* We conclude that the circumstances are equally consistent with either of the facts.[4] Thus, neither may be inferred. *See id.* The evidence is insufficient because the finder of fact

---

[4] There was no evidence regarding McKeithan's financial circumstances, such as her assets, income, or liabilities. There was no evidence of the source or circumstances of the $28,000 in payments.

12

had to guess whether McKeithan had $28,000 in December 2008.  *See id.*  Accordingly, the evidence is legally insufficient to establish fraud.  *See id.*  McKeithan's first issue is sustained.[5]

### III. ONE SATISFACTION RULE

In her second issue, McKeithan argues that the one satisfaction rule prohibits Condit from recovering breach of contract damages and exemplary damages for fraud based on the same injury (i.e., McKeithan's failure to pay Condit as promised in the attorney-client agreement).  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (West 2008) ("'Exemplary damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. 'Exemplary damages' are neither economic nor noneconomic damages. 'Exemplary damages' includes punitive damages."); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("[T]he one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury").  By sustaining McKeithan's first issue, we negated the trial court's basis for awarding exemplary damages.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1) (West 2008) ("[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . fraud . . . .").

---

The finder of fact could only guess about how that money was acquired and whether it was available in December 2008.  On this record, it is possible that the money was acquired and available prior to December 2008, but it is equally possible that the money was not acquired or available until after December 2008.

[5] We note that, for the same reasons, the evidence is also factually insufficient to establish fraud. *See* TEX. R. APP. P. 47.1.  We also note that because this case involved a post-answer default, McKeithan's "legal sufficiency challenge will not result in greater relief than . . . [a] new trial." *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009).

Accordingly, we dismiss McKeithan's second issue as moot.  *See* TEX. R. APP. P. 47.1.

## IV. BREACH OF CONTRACT

In her third issue, McKeithan argues that the evidence is insufficient to support the trial court's award of damages for breach of contract in the amount of $37,584.[6]

### A. Applicable Law

"The elements for a breach of express contract claim are:  (1) a valid contract, (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach."  *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App.—Corpus Christi 2007, pet. denied).  However, "[w]hen interpreting and enforcing attorney-client fee

---

[6] In her third issue, McKeithan does not specify whether her challenge is to the legal sufficiency of the evidence, the factual sufficiency of the evidence, or both.  We do not require the parties to use magic words.  *See Benavente v. Granger*, 312 S.W.3d 745, 747 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("'It was said in the beginning that magic in words in points of error should be as extinct as the dodo bird.'") (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. LAW REV. 361, 371 (1960)).  Therefore, "[w]hen the party's brief . . . [is] ambiguous, we and other courts of appeals have looked to a party's prayer for relief to determine what standard of review to apply."  *Id.*  In this case, McKeithan "prays the trial court's judgment be in all respects REVERSED, and judgment in her favor RENDERED."  This is consistent with a legal sufficiency challenge.  *See City of Univ. Park v. Van Doren*, 65 S.W.3d 240, 246–47 (Tex. App.—Dallas 2001, pet. denied) (construing appellate issue to be legal sufficiency when appellant sought rendition); *Beach v. Resolution Trust Corp.*, 821 S.W.2d 241, 245 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that rendition is remedy for no evidence challenge).  However, McKeithan also "prays . . . with respect to any part of the judgment that cannot be rendered that the case [be] REMANDED to the trial court for further proceedings in accordance with the Court's opinion."  This is consistent with a factual sufficiency challenge.  *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981) (indicating that remand for new trial is remedy for factual insufficiency of evidence).  Yet, in the context of this case, this portion of McKeithan's prayer for relief is also consistent with a legal sufficiency challenge because, as set forth above, this case involved a post-answer default, which means McKeithan's "legal sufficiency challenge will not result in greater relief than . . . [a] new trial."  *Dolgencorp*, 288 S.W.3d at 930.  Accordingly, McKeithan's prayer for relief is not dispositive in determining the nature of her challenge to the sufficiency of the evidence.  *See Benavente*, 312 S.W.3d at 747.  In circumstances such as these, courts look to the substance of the argument to determine whether it "is more like one of factual sufficiency than of legal sufficiency."  *Id.* at 748.  Having reviewed McKeithan's brief, and the arguments made therein to support her contention that the evidence is insufficient to support the damages award for Condit's breach of contract claim, we conclude that the challenge is to the legal sufficiency of the evidence, not to the factual sufficiency of the evidence, because McKeithan does not purport to demonstrate that the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," which is required in a factual sufficiency challenge.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (holding that in a factual sufficiency challenge, "the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust").  Accordingly, we confine our analysis to the legal sufficiency of the evidence.  *See* TEX. R. APP. P. 47.1.

14

agreements, it is not enough to simply say that a contract is a contract." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006). "There are ethical considerations overlaying the contractual relationship." *Id.* The Texas Rules of Disciplinary Procedure prohibit "an attorney from enter[ing] into an arrangement for, charg[ing], or collect[ing] an illegal fee or unconscionable fee." TEX. R. DISCIPLINARY PROC. 1.04(a). "A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." *Id.* The rules provide in relevant part as follows:

> (b) Factors that may be considered in determining the reasonableness of a fee include, but not to the exclusion of other relevant factors, the following:
>
>> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>>
>> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>>
>> (3) the fee customarily charged in the locality for similar legal services;
>>
>> (4) the amount involved and the results obtained;
>>
>> (5) the time limitations imposed by the client or by the circumstances;
>>
>> (6) the nature and length of the professional relationship with the client;
>>
>> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>>
>> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* 1.04(b).   Finally, we note that "in reviewing an attorney's fee award for excessiveness, we may draw upon our common knowledge as justices of the court and our experience as lawyers and judges."   *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

## B. Discussion

In this case, Condit testified that he agreed to represent McKeithan at the reduced rate of $185 per hour.  He also testified about the general nature of the case, which involved a foreclosure and a suit on a promissory note.  He was defending McKeithan, but he also asserted a counterclaim on her behalf.  He described the case as being "one of the most difficult cases" he has tried, despite his twenty-six years of experience handling "2,000 lawsuits."  According to Condit, he worked in excess of 200 hours before being replaced by another lawyer.  His billing records for the case were admitted into evidence and show specific details corroborating his testimony.  In terms of his schedule, the evidence indicates that Condit was unable to work on other matters because he was at trial in McKeithan's case for five days and spent a sixth day preparing for trial.

McKeithan argues that the evidence is insufficient to support the award of fees because Condit did "nothing to connect these time entries to the *Arthur Anderson* factors, or show the amounts reflected in the bill were reasonable or necessary, other than assuring the Court that it is."  According to McKeithan, Condit offered only "his *ipse dixit* that things are as he claims."[7]  She argues that there is, therefore, no evidence to

---

[7] The term "*ipse dixit*" is "Latin for 'he himself said it' [and in this context, it means] [s]omething asserted but not proved."  *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) (quoting BLACK'S LAW DICTIONARY 847 (8th ed. 2004)).

16

support the award of damages for breach of contract in the amount of $37,584.  *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 117 (Tex. 2000) (stating that the "test for 'no evidence' rule is whether reasonable minds could differ on an issue of vital fact"). We disagree.

"An attorney's testimony about the reasonableness of his or her own fees is not like other expert witness testimony."  *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010).  "Although rooted in the attorney's experience and expertise, it also consists of the attorney's personal knowledge about the underlying work and its particular value to the client."  *Id.*  According to the Texas Supreme Court, "[t]he testimony is similar to that of a property owner whose personal knowledge qualifies him to give an opinion about his own property's value."  *Id.* (citing *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 874 (Tex. 2009); *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002)).  "The attorney's testimony is not objectionable as merely conclusory because the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee."  *Id.*  "[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law."  *Id.* at 642.

In this case, the award of attorney's fees as breach of contract damages was not based merely on a conclusory statement that a reasonable fee was $37,584, as

17

McKeithan suggests. The evidence established an agreed hourly rate of $185, which went uncontested as a reasonable hourly rate for Condit based on his professional experience, qualifications, and reputation in the community. Condit's time records were admitted into evidence, and they substantiate his testimony that he spent in excess of 200 hours in representing McKeithan. We are also mindful that "the court may draw upon its common knowledge and experience" in determining the reasonableness of the rate. *Moreno v. Reliable Insulation, Inc.*, 217 S.W.3d 769, 772 (Tex. App.—Dallas 2007, no pet.). Based on the foregoing, we conclude that the evidence is legally sufficient to support the award of breach of contract damages in the amount of $37,584. *See Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 580 (Tex. 2012) ("[A] reasonable hourly rate multiplied by the number of hours spent performing necessary services . . . yields a reasonable fee."). Accordingly, McKeithan's third issue is overruled.

## V. Attorney's Fees

In her fourth issue, McKeithan argues that the evidence is legally and factually insufficient to support the trial court's award of attorney's fees to Condit for prosecution of this suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(1), (8) (West 2008) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . (1) rendered services . . . or (8) an oral or written contract.").

### A. Applicable Law

"As a general rule, the party seeking to recover attorney's fees carries the burden of proof." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). "In order to

show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Id.* "A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Id.* at 11. "Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims." *Id.*

## B. Discussion

At trial, Condit testified that he "spent in excess of 58 hours" on this case. As noted above, he also testified that his discounted hourly rate is $185. Fifty-eight hours at an hourly rate of $185 is $10,730. The trial court awarded $23,033. Ostensibly, the basis for this award was Condit's testimony, "I think a 40 percent contingency fee contract or contract basis is reasonable and fair, and that would be $23,303." McKeithan argues that the trial court erred in awarding attorney's fees using a contingency-fee formula, which we agree, is not allowed.[8]

---

[8] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex. 1997) ("[T]he plaintiff cannot simply ask the jury to award a percentage of the recovery as a fee because without evidence of the factors identified in Disciplinary Rule 1.04, the jury has no meaningful way to determine if the fees were in fact reasonable and necessary."); *see also Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007) (per curiam) ("Although attorney's fees in this case were awarded by the trial court rather than the jury, the factors governing their assessment are the same and include consideration of the 'results obtained.'"); *Cleveland v. Taylor*, 397 S.W.3d 683, 702 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding, in the context of a summary judgment proceeding: "Attorney's fees cannot be awarded as a percentage of an amount of damages based solely on the existence of a contingency fee contract. To recover attorney's fees from the defendant, a plaintiff must request a specific sum for the attorney fees, not expressed as a percentage of the damages.") (citing *Arthur Andersen*, 945 S.W.2d at 818–19); *Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 775, 778 (Tex. App.—Corpus Christi 2007, no pet.) (holding, in a case involving a summary judgment, that attorney's "contentions that . . . [the plaintiff] agreed to pay reasonable attorney's fees and that 1/3 or $91,589.09 would be reasonable, without

McKeithan also argues that the award must be reversed based on Condit's failure to segregate fees for his time on the breach of contract claim from his time on the fraud claim, for which the recovery of attorney's fees is not authorized. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(1)–(8); *Tony Gullo Motors*, 212 S.W.3d at 304 ("For fraud, []he could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees."); *Stewart Title*, 822 S.W.2d at 11 ("[A]n award of attorney's fees erroneously based upon evidence of unsegregated fees requires a remand."). However, "if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Green International, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). Therefore, the complaint is waived because McKeithan failed to make this objection to the trial court. *See id.*

We sustain McKeithan's challenge to the sufficiency of the evidence, but to the extent that she complains about failure to segregate fees as to specific claims, we conclude that the error, if any, was waived by her failure to object. *See id.* Accordingly, we sustain McKeithan's fourth issue in part and overrule it in part.[9]

---

evidence of the other factors in rule 1.04, most importantly, without evidence that the fee is reasonable for purposes of shifting the fee to . . . [the defendant], does not prove that the fee was reasonable for purposes of a recovery of attorney's fees from . . . [the defendant]") (citing *Arthur Andersen*, 945 S.W.2d at 818–19); *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 621 (Tex. App.—Fort Worth 2006, pet. denied) (stating, in a case involving a bench trial, that "[a] party cannot simply ask to be awarded a percentage of the recovery as a fee because without evidence of the factors identified in rule 1.04(b), the fact[-]finder has no meaningful way to determine if the fees were in fact reasonable and necessary") (citing *Arthur Andersen*, 945 S.W.2d at 818–19); *Dunn v. Southern Farm Bureau Casualty Insurance Co.*, 991 S.W.2d 467, 475 (Tex. App.—Tyler 1999, pet. denied) (noting, in a case involving a non-jury trial, that "[r]ecently, the Texas Supreme Court held that a plaintiff can no longer simply ask the fact finder to award a percentage of the damages as attorney fees") (citing *Arthur Andersen*, 945 S.W.2d at 817–18).

[9] Again, we note that in a case such as this, involving a post-answer default, the appellant's successful legal sufficiency challenge will entitle the appellant to a new trial, not rendition of judgment. *Dolgencorp*, 288 S.W.3d at 930 (directing appellate court to "remand[] for a new trial after a post-answer default judgment rather than rendering judgment").

## VI. CONCLUSION

The judgment of the trial court is reversed in part and affirmed in part. We reverse the trial court's judgment with respect to Condit's fraud claim and with respect to his request for attorney's fees. We remand the case for a new trial on the fraud claim and the request for attorney's fees. In all other respects, the judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
19th day of December, 2013.

21