**Affirmed and Opinion filed October 30, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00040-CV

## LAURA BRYAN, Appellant

## V.

## DEBORA COELHO GORDON AND WINDERMERE REAL ESTATE/LANE COUNTY, Appellees

On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2010-25937

# OPINION

Appellant, Laura Bryan, appeals the trial court's grant of a special appearance filed by appellees, Debora Coelho Gordon and Windermere Real Estate/Lane County, in Bryan's suit based on appellees' alleged torts relative to their representation of Bryan in an Oregon real estate transaction. We affirm.

# I. BACKGROUND

In April 2006, Bryan resided in Oregon and purchased a home there. Bryan signed a note secured by a second mortgage on the property. Apparently, via assignment, Citi Mortgage, Inc. became holder of the note and later assigned it to Old Republic Insurance Company. In September 2007, Bryan left Oregon for personal reasons and returned to her home state of Texas, where she began residing with her mother in Katy. At some point, Bryan ceased making mortgage payments on the Oregon property.

Bryan alleges that Citi Mortgage and Titanium Solutions, a nationwide real estate brokerage firm, had a relationship whereby the entities shared information regarding financially distressed properties so that they could approach the owners to facilitate a "short sale." Titanium would then refer the owner to a real estate agent to represent the owner in the short sale. In return, Titanium received a share of the agent's commission.

In late 2007, Citi Mortgage mistakenly identified the Texas home owned by Bryan's mother as a financially distressed property. A Titanium employee went to the Texas home and spoke with Bryan. Bryan informed the employee that the property involved in foreclosure proceedings was located in Oregon.

Based on a referral from Titanium, appellee Gordon, a real estate agent with appellee Windermere, telephoned Bryan about representing her in a short sale of the property. However, the parties dispute whether Bryan or Gordon initiated the contact. According to Gordon, a Titanium representative relayed to her that Bryan wished to sell property in Oregon and requested contact from an Oregon real estate agent. In contrast, Bryan maintains she merely provided her contact information to the Titanium employee but never requested assistance selling the property or that anyone contact her regarding a sale. Bryan further maintains that, during this phone conversation, Gordon said she "was going to help [Bryan] sell [her] home" to avoid "foreclosure" and any delinquency would be "taken care of" by a short sale. Bryan claims Gordon also made numerous statements leading Bryan to believe that Gordon was ensuring Bryan's "best interests" and Bryan

2

was unaware that a secondary lender was precluded under Oregon law from obtaining a judgment for a deficiency after a foreclosure.

In her deposition, Gordon acknowledged that she and Bryan had a "couple different phone conversations" before Bryan executed a listing agreement because Bryan was initially undecided on a course of action. Gordon averred, but Bryan disputes, that Gordon advised Bryan to consult legal counsel about the proposed listing contract, Bryan's concerns regarding the fact the property was in foreclosure proceedings, and her status if short-sale proceeds were insufficient to satisfy the mortgages.

Bryan did ultimately sign an Oregon listing agreement with appellees. Gordon e-mailed the contract to Bryan who signed it while she was in Texas and returned it via e-mail. Gordon further acknowledged that she thereafter made more than fifty telephone calls and sent multiple e-mails to Bryan concerning the sale. In October 2008, the short sale was conducted.

According to Bryan, under Oregon law, when a residential property is foreclosed, a second mortgage holder may not recover from the borrower for a delinquency remaining after the foreclosure sale; conversely, after a short sale of residential property, the second mortgage holder obtains a new debt which is collectable against the borrower. Bryan contends that, therefore, a short sale was significantly more harmful to her than foreclosure because the short sale resulted in creation of a new debt relative to the second mortgage. Bryan complains that Gordon failed to advise Bryan a short sale was not in her best interests and instead solicited and encouraged the short sale so that appellees would obtain a commission.

Old Republic sued Bryan seeking to recover the balance of $29,628.96 due on the note secured by the second mortgage. In her live pleading, Bryan counterclaimed against Old Republic and asserted third-party claims against appellees, Titanium, and Citi Mortgage. Bryan asserted claims against appellees for negligent misrepresentation,

3

fraud, fraudulent inducement, breach of fiduciary duties, civil conspiracy, and RICO violations and sought consequential and punitive damages, plus attorney's fees.

Appellees filed a special appearance to which Bryan responded. The evidence submitted by the parties with these filings included the following: affidavits of Gordon, another Windermere representative, and Bryan; Gordon's deposition; and appellees' discovery responses. The trial court conducted a hearing during which it heard arguments but no additional evidence. On January 13, 2012, the trial court signed an order, sustaining the special appearance and dismissing the claims against appellees for want of jurisdiction. Bryan then filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2012).

## II. ANALYSIS

In her sole issue, Bryan contends the trial court erred by sustaining appellees' special appearance.

### A.    Applicable Law and Standard of Review

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A defendant challenging a Texas court's personal jurisdiction over the defendant must negate all jurisdictional bases alleged. *Id.*

Texas courts may exercise jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of personal jurisdiction and the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas and lists certain activities that constitute "doing business," including "commits a tort in whole in part" in Texas. Tex. Civ. Prac. & Rem. Code Ann.

4

§ 17.042 (West 2008). The Texas long-arm statute extends Texas courts' personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Thus, we rely on precedent from the United States Supreme Court and other federal courts, as well as our own State's decisions, in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *Id.*

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are satisfied: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Int'l Shoe*, 326 U.S. at 319; *Moki Mac*, 221 S.W.3d at 575; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three aspects pertinent to a "purposeful availment" inquiry: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than "random, fortuitous, or attenuated"; and (3) "'the defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction'"; in contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Moki Mac*, 221 S.W.3d at 575 (quoting *Michiana*, 168 S.W.3d at 785).

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Id.* at 575; *BMC Software*, 83 S.W.3d at 795–96. If the defendant has made continuous and systematic contacts with

the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d at 796. In contrast, when specific jurisdiction is alleged, we focus the minimum-contacts analysis on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76. Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Id.* at 576; *BMC Software*, 83 S.W.3d at 796. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Id.* at 574; *BMC Software*, 83 S.W.3d at 794. However, the trial court frequently must resolve questions of fact before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794. When, as in the present case, a trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. However, these inferred findings are not conclusive and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *Id.*; *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We review findings relative to a special-appearance ruling under the same standards applicable for reviewing a finding of fact at trial. *See Huynh v. Nguyen*, 180 S.W.3d 608, 615 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if

6

it would enable a reasonable and fair-minded person to find the fact under review. *Id.* The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See id.* at 819.

In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. L.P. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

## B.    Specific Jurisdiction

Bryan stipulates that the inquiry in the present case involves only specific jurisdiction and she advances no general-jurisdiction argument. Bryan frames her issue regarding specific jurisdiction as follows: "Whether exercising specific personal jurisdiction over an Oregon real estate agent offends due process when: (a) The real estate agent placed an unsolicited phone call to a Texas resident in hopes of obtaining a commission; (b) The agent entered into a formal fiduciary relationship with the resident; and; (c) In the course of operating as the resident's fiduciary, the agent violated her fiduciary duties by withholding material information for personal gain."

We conclude that appellees lack the minimum contacts requisite for a Texas court to exercise specific jurisdiction because the purposeful-availment requirement is not satisfied. *See Int'l Shoe*, 326 U.S. at 319; *Moki Mac*, 221 S.W.3d at 575; *Michiana*, 168 S.W.3d at 784. Therefore, we need not address the traditional-notions-of-fair-play-and-substantial-justice inquiry. *See BMC Software*, 83 S.W.3d at 795.

With respect to Bryan's contention that the contact by appellees was unsolicited, she suggests any conflicting evidence must be resolved in the plaintiff's favor. However, Bryan recites an incorrect standard. Relative to jurisdictional facts, we apply the standard recited above and imply the trial court made all findings in support of its ruling and determine whether those findings are supported by the evidence. *See BMC Software*, 83 S.W.3d at 795; *Max Protetch*, 340 S.W.3d at 884.[1]

Bryan averred she did not request the Titanium employee to have a real estate agent contact her regarding a sale of the property whereas Gordon testified she was informed by Titanium that Bryan had made such a request. To the extent these accounts are conflicting, the trial court was free to believe that Bryan did make such request; therefore, although Gordon placed the first call, the initial contact was solicited by Bryan. Alternatively, we note that the accounts presented by Gordon and Bryan are not necessarily conflicting. We cannot foreclose the possibility that both parties were correct in their recollections but the Titanium employee inaccurately relayed Bryan's wishes to Gordon. Nonetheless, even in this latter scenario, the trial court was free to believe Gordon's testimony indicating that, at least from her perspective, the initial contact was solicited by Bryan because Gordon was *informed* Bryan requested the contact. *See Moki Mac*, 221 S.W.3d at 575 (stating that, relative to the purposeful-availment analysis, only defendant's contacts with forum are relevant, not the unilateral activity of another party or third person).

Bryan cites a portion of Gordon's testimony to support Bryan's argument that Gordon solicited a Texas resident as a client:

> Q.    Okay. So based on the fact that she [Bryan] had never heard of you, it's fair to say that she had not - - she was not soliciting your personal

---

[1] Bryan first expressly challenges sufficiency of the evidence to support the trial court's implicit findings in her reply brief, as opposed to her original brief, in which she maintains that conflicting evidence must be resolved in favor of the plaintiff. Nevertheless, because we ultimately uphold the findings, we will consider the sufficiency challenge.

services or Windermere's personal services by filling out an information form that was handed to her by a Titanium representative?

A.    Not at that time, no.

Q.    Right.   And so when we talk about who solicited whom, you received her information from Titanium as a referral based on your prior relationship with Titanium and you placed the phone call.  Correct?

A.    Yes.

Q.    You were soliciting her as a potential real estate client.  Correct?

A.    Yes.

Viewed in context of all Gordon's testimony, the above-quoted excerpt does not support Bryan's assertion that the relationship was solicited by Gordon.  Relative to the first question quoted above, Gordon had already testified that she was informed Bryan requested contact by an Oregon real estate agent.  Therefore, Gordon's answer to this question meant that Bryan did not ask for Gordon or Windermere by name.  With respect to the remainder of the above-quoted testimony, considering Gordon was informed Bryan requested contact from an Oregon real estate agent, Gordon meant she "solicited" Bryan in the respect that Gordon responded to Bryan's initial request for contact and pursued the opportunity to do business with Bryan.[2]

We recognize that Gordon indeed pursued the opportunity to do business with Bryan, whom Gordon knew was a Texas resident, by responding to the request for contact, placing subsequent calls to facilitate signing of the listing agreement and sale of the property, and entering into the listing agreement.  Regardless, the evidence is sufficient to support a finding that appellees did not initially target Bryan as a client.  Moreover, there is no evidence that appellees generally solicited business in Texas.

_____

[2] We do not necessarily hold that specific jurisdiction would be established if Gordon solicited the initial contact.  We need not address that issue because the evidence supports a finding that Gordon did not solicit the initial contact.

Indeed, appellees are licensed to practice real estate in Oregon, have never been licensed or practiced real estate in Texas, and have no employees, servants, or agents in Texas. Gordon has never advertised in Texas and at the time of her deposition, had never represented any Texas resident in an Oregon real estate transaction. Consequently, the significant point for the purposeful-availment analysis is that appellees' relationship with Bryan did not arise out of any targeted efforts on their part to obtain clients in Texas. *Cf. Moki Mac*, 221 S.W.3d at 576 (stating that non-resident who directs marketing efforts to Texas in the hope of soliciting sales is subject to suit here for alleged liability arising from or relating to that business). Instead, it was fortuitous that Bryan resided in Texas when appellees responded to her initial request for contact from an Oregon real estate agent to sell her Oregon property and pursued the opportunity to do business with her.

Accordingly, we turn to Bryan's reliance on the fact that (1) appellees formed a fiduciary relationship with a Texas resident, from which appellees sought to obtain a commission, and (2) appellees allegedly breached their fiduciary duties to the Texas resident during multiple telephone calls while the resident was located in Texas.[3]

The fact that appellees conducted business with Bryan, as a Texas resident, is insufficient alone to confer specific jurisdiction. *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 474–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that nonresident does not establish minimum contacts with Texas simply by contracting with a Texas resident and engaging in numerous communications, by telephone or otherwise, with persons in Texas concerning the contract); *Weldon-Francke v. Fisher*, 237 S.W.3d 789, 796 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (stating that New Hampshire

---

[3] On appeal, Bryan focuses on her breach-of-fiduciary-duty claims, although she alleged other tort claims in her live pleading. Nonetheless, all claims are based on the same alleged misrepresentations—through either affirmative representations or failures to disclose. Therefore, our jurisdictional analysis applies to all Bryan's claims. Moreover, solely for purposes of the jurisdictional analysis, we will assume, without deciding, the relationship between appellees and Bryan was a fiduciary relationship.

lawyer's contracting with and accepting payment from Texas resident for services performed in New Hampshire was insufficient to support specific jurisdiction).

With respect to Bryan's allegations that appellees breached their fiduciary duties during telephone conversations with Bryan while she was located in Texas, *Michiana* is persuasive. In *Michiana*, the defendant manufacturer of recreational vehicles was located in Indiana, had no employees or property in Texas, was not authorized to do business in Texas, did not advertise in Texas or on the internet, and thus did not solicit business from the plaintiff resident of Texas or anyone else in Texas. 168 S.W.3d at 784. Rather, via a telephone call to the defendant, the plaintiff initiated purchase of a recreational vehicle. *Id.* The vehicle was constructed outside Texas, paid for outside Texas, and shipped to Texas at the plaintiff's request and expense. *Id.* The Supreme Court of Texas held that Texas courts lacked specific jurisdiction over the plaintiff's tort claims based on misrepresentations about the transaction, allegedly made by the defendant during the phone call. *See id.* at 784–94.

The *Michiana* court held that "direct[ing] a tort" at Texas is insufficient alone to establish jurisdiction because such a concept would improperly shift a court's focus to the relationship among the "*plaintiff*, the forum . . . and the litigation" rather than "the *defendant*, the forum and the litigation." *Id.* at 790–91. Similarly, the *Michiana* court rejected the notion that specific jurisdiction was appropriate because the alleged tort was committed during a telephone conversation between the plaintiff in Texas and the defendant. *See id.* at 791–92. The court reasoned, "changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. . . . If jurisdiction can be based on phone conversations 'directed at' a forum, how does a defendant avail itself of any jurisdiction when it can never know where the other party has forwarded calls or traveled with a mobile phone?" *Id.* at 791. The court further recognized the purposeful-availment analysis must focus on the extent of the defendant's activities and not the fact that the plaintiff "happens to live" in the forum state during a singular phone

conversation. *See id.* at 789–90; *see also Peredo*, 310 S.W.3d at 475 (citing *Michiana* when stating that jurisdictional inquiry does not focus on the state in which plaintiff relies on alleged misrepresentation at issue).

We acknowledge that there was a singular phone call in *Michiana* whereas Gordon and Bryan engaged in multiple phone conversations. However, a real estate agent's representation of a client in a sale of property might naturally encompass more phone communications than involved in sale of a product because axiomatically the real estate agent must relay to the client various purchase offers and other information necessary to close the sale. Nevertheless, like the relationship in *Michiana*, the relationship in the present case concerned a one-time transaction in another state, which did not result from any attempts by appellees to solicit business in Texas, irrespective of the number of phone conversations necessary to conduct the transaction. *See Peredo*, 310 S.W.3d at 472 (recognizing it is "not the number, but rather the quality and nature" of the nonresident's contacts with the forum state that are important to the purposeful-availment analysis).

Additionally, the *Michiana* court rejected any significance to the fact that its defendant anticipated profit from the sale to the Texas resident, stating "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." 168 S.W.3d at 788. Therefore, the fact that appellees sought to obtain a commission from their relationship with Bryan is not controlling in the purposeful-availment analysis.

Although Bryan does not emphasize this fact, she also mentions that appellees e-mailed the listing agreement to Bryan in Texas, she signed it while located in Texas, the parties engaged in further e-mail communications during their relationship, and appellees also allegedly breached their fiduciary duties in the e-mail communications. However, neither Gordon nor any other employee of Windermere traveled to Texas for execution of

12

the contract. Additionally, because the fact a non-resident contracted with a Texas resident is insufficient to support specific jurisdiction, *Peredo*, 310 S.W.3d at 474–75, it follows that the resident's receipt and execution of the contract in Texas is insufficient to support specific jurisdiction. Obviously, when the contractual relationship is governed by a written instrument, the resident must sign the contract somewhere and it is not unusual that the resident might do so in her own state. Thus, we conclude disposition of the jurisdictional question should not turn on the mere distinction between whether the plaintiff signed the contract in Texas or traveled to the defendant's state or elsewhere to sign the contract. Further, similar to the phone-conversation reasoning, *see Michiana*, 168 S.W.3d at 791–92, because of modern technologies and mobility of computer devices, we believe the purposeful-availment analysis should not turn on the fortuity of where the Texas resident was physically located when the defendant e-mailed the contract or when the defendants made allegedly actionable misrepresentations by e-mail. *See Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655–56 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Michiana* phone-conversation reasoning when rejecting contention that nonresident satisfied purposeful-availment requirement because it sent e-mails to Texas "for the purpose of consummating" sale of product to Texas resident and later to misrepresent the reason it refused to complete the sale; and stating that, when Texas resident initiates purchase of equipment outside Texas by contacting non-resident that does not direct marketing to Texas, "it matters little" whether nonresident answers the inquiry by telephone or by email).

Bryan emphasizes that the relationship between appellees and Bryan was a *fiduciary* relationship and it was a breach of attendant *fiduciary* duties which allegedly occurred during their conversations. Moreover, Bryan emphasizes the alleged degree of wrongdoing on the part of appellees. For example, Bryan asserts that appellees "hoodwinked" Bryan who lacked knowledge of Oregon law and she "has a right to exact Texas justice upon these Defendants that so blatantly violated their fiduciary duties to

13

collect a few thousand dollars from a short sale commission." However, these arguments do not alter our analysis.

The *Michiana* court did not distinguish between types or degrees of torts when stating that "direct[ing] a tort" at Texas and committing a tort via a telephone call with a Texas resident are insufficient to support specific jurisdiction. *See* 168 S.W.3d at 788–92. Moreover, Bryan's contentions concern the merits of her cause of action rather than the minimum contacts requisite to personal jurisdiction. The *Michiana* court rejected the proposition that "specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves." *Id.* at 792. "If committing a tort establishes jurisdiction, our colleagues will have to decide which [party] is correct—and then the Texas jurisdictional rule will be: guilty nonresidents can be sued here, innocent ones cannot." *Id.* at 791. Therefore, we focus on appellees' contacts with Texas—not the alleged degree of wrongdoing on their part toward a Texas resident. *See id.* at 791–92.

Bryan cites *Herbert v. Greater Gulf Coast Enterprises, Inc.*, 915 S.W.2d 866 (Tex. App.—Houston [1st Dist.] 1995, no writ) to support her proposition that an allegation of wrongdoing by a fiduciary against a Texas resident is sufficient to support specific jurisdiction. However, the *Herbert* court did not make such a broad holding. *See id.* at 870–71. In that case, the court held that specific jurisdiction was established over a subcontractor's claim against a non-resident general contractor for misappropriation of trust funds based on his failure to pay for labor and materials provided by the subcontractor. *Id.* at 870–71. *Herbert* is distinguishable from the present case because its plaintiff alleged that the non-resident general contractor violated the *Texas* trust fund statute by misdirecting funds it received under a construction contract for a project located in *Texas*. *See id.*

Rather, we find *Bergenholtz v. Cannata*, 200 S.W.3d 287, 295–97 (Tex. App.—Dallas 2006, no pet.) is more analogous to the present case because the court analyzed the non-residents' contacts with Texas instead of considering mere existence of their

14

fiduciary relationship with a Texas resident or allegations regarding breach of fiduciary duties during communications with the Texas resident. In particular, the court held that Texas courts lacked specific jurisdiction over the plaintiff's breach-of-fiduciary-duty, and other tort, claims against his California lawyers, despite the fact that the plaintiff was located in Texas when he received the lawyers' communications and advice, signed a fee agreement, and paid the lawyers' bills. *See id.* at 291–92, 295–97. The court concluded the lawyers did not purposefully avail themselves of the privilege of doing business in Texas because they represented the plaintiff in a California suit, the lawyers were not licensed to practice law in Texas and maintained no offices or employees in Texas, the representation did not result from the lawyers' soliciting business in Texas, communications with the plaintiff which allegedly constituted actionable misrepresentations concerned the California suit, the lawyers provided the advice at issue from California, and the lawyers did not travel to Texas in connection with the representation. *See id.*

Similarly, we cannot separate the totality of undisputed facts relied on by Bryan— she was a Texas resident during the parties' fiduciary relationship, she received and signed the contract in Texas, appellees obtained a commission from Bryan, and she was located in Texas during the parties' referenced phone conversations—from the following factors: (1) the property that was the subject of the contract and the parties' relationship is located in Oregon; (2) the contract was an Oregon listing agreement; (3) the short sale about which appellees allegedly made misrepresentations occurred in Oregon; (4) appellees' commission was obtained solely for this Oregon sale; (5) the commission was paid out of an Oregon bank account; (6) no representative of appellees traveled to Texas in connection with the transaction or their relationship with Bryan; (7) the multiple phone conversations, as well as e-mails, between appellees and Bryan concerned this Oregon transaction; (8) the note securing the second mortgage on which Bryan remains liable, purportedly as a result of appellees' conduct, was signed in Oregon; (9) in her live pleading, Bryan acknowledges, "[t]he laws of the state of Oregon apply to the subject

15

matter of this dispute" and claims appellees made misrepresentations regarding Bryan's "rights as a property holder in the state of Oregon"; (10) indeed, it is the laws of Oregon on which Bryan relies when complaining that the short sale was not in her best interest and appellees failed to advise her regarding adverse consequences of the sale; and (11) as discussed above, appellees did not initially solicit Bryan's business but instead, from their perspective, responded to her request for contact by an Oregon real estate agent to handle a sale of Oregon property.

Accordingly, the relationship between appellees and Bryan and the parties' communications concomitant to that relationship concerned a one-time Oregon real estate transaction that had no connection to Texas other than the fact that Bryan happened to reside in Texas during the relationship, was located in Texas when she received and signed the contract, and was located in Texas during the parties' communications. All of the above factors support a conclusion that appellees' contacts with Texas were too "random, fortuitous, or attenuated" to satisfy the purposeful-availment requirement and they did not seek to enjoy any benefits or protections of Texas law. *See Moki Mac*, 221 S.W.3d at 575; *Michiana*, 168 S.W.3d at 785, 787.

In summary, we conclude the trial court did not err by sustaining appellees' special appearance. Accordingly, we overrule Bryan's sole issue and affirm the trial court's judgment.


/s/     Charles W. Seymore
        Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

16