**Affirmed and Opinion Filed August 20, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-22-01375-CV

---

### JOHN FEENEY, Appellant
### V.
### MORFIN CAPITAL GROUP LLC AND MEDONE TEXAS MSO, LLC,
### Appellees

---

### On Appeal from the 162nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-22-07016

---

## MEMORANDUM OPINION
Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Goldstein

Appellant John Feeney appeals the trial court's denial of his special appearance. In four issues, Feeney contends that the trial court erred because (1) appellees Morfin Capital Group LLC (Morfin Capital) and MedOne Texas MSO, LLC (MedOne) failed to sufficiently plead and prove jurisdictional facts; (2) Feeney lacked sufficient minimal contacts with Texas; (3) the fiduciary shield doctrine precluded the trial court's exercise of personal jurisdiction; and (4) the trial court's exercise of personal jurisdiction did not comport with traditional notions of fair play

and substantial justice. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.2(a).

## BACKGROUND

On June 24, 2022, Morfin Capital and MedOne, both owned by Ryan Morfin, filed this lawsuit against Feeney and three other defendants: One Health Medical Systems LLC (One Health), David J. Ross, and Roger Farahmand. The original petition alleged that Feeney, Ross, and Farahmand were "the owners or principals" of One Health and, in those roles, represented to MedOne that One Health had sufficient financial resources to purchase MedOne's assets. The petition further alleged that, based on those representations, MedOne entered into an asset purchase agreement (APA) with One Health, which the latter could not perform because it lacked the financial resources to buy MedOne's assets. The petition asserted a claim for breach of contract against One Health and a claim for fraudulent inducement against Feeney, Ross, and Farahmand. Of the four defendants, Feeney was the only one identified by the original petition as a non-Texas resident.

On August 28, 2022, Feeney filed a special appearance, asserting that he was a Wisconsin resident who had "no meaningful contacts with Texas[.]" In the special appearance, Feeney complained that the original petition failed to include any factual allegations about his contacts with Texas sufficient for the trial court to exercise personal jurisdiction over him. In an attached declaration, Feeney testified that he had never lived in Texas, had no property in Texas, and was "not a member or

manager for any of the . . . limited liability companies named as parties to this lawsuit." Feeney scheduled an oral hearing on his special appearance for September 26, 2022.

On September 21, 2022, Morfin Capital and MedOne filed their first amended petition, adding additional jurisdictional facts about Feeney. Namely, the first amended petition contained an allegation that Feeney was the CEO of One Health. It also alleged in June 2018, "Ross, Farahmand, and Feeney met with [Morfin] several times in Texas" and "told [Morfin] that One Health had sufficient finances to complete an acquisition of MedOne's assets." At the September 26 hearing, the trial court noted that this specific allegation was not contained in appellees' original petition and that Feeney had not had the opportunity to adduce evidence to controvert the allegation. The trial court therefore recessed the hearing and directed Feeney's counsel to "amend your special appearance in order to include whatever you believe counters the statements in [appellees'] first amended petition."

On November 2, 2022, Feeney filed his first amended special appearance. Attached to the special appearance was Feeney's unsworn declaration. In paragraph 3 of the declaration, Feeney testified that he had not "committed any torts in the State of Texas." Feeney scheduled a hearing on the special appearance for December 2. On November 23, appellees filed their second amended petition. On November 29, appellees filed a response to the special appearance and objection to Feeney's declaration. Specifically, appellees objected to paragraph 3 of Feeney's declaration

–3–

on the ground that it was conclusory. After the scheduled hearing, the trial court entered an order sustaining appellees' objection and denying Feeney's special appearance. This appeal followed.

## DISCUSSION

### I.   STANDARD OF REVIEW

We review a trial court's exercise of personal jurisdiction over a nonresident defendant de novo. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 125 (Tex. App.—Dallas 2021, no pet.) (en banc). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* "When the appellate record includes the reporter's and clerk's records, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *Id.* at 125–26. "When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction." *Id.* at 126.

### II.   APPLICABLE LAW

"A court must have personal jurisdiction over a defendant to issue a binding judgment." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). Trial courts may exercise personal jurisdiction over a nonresident defendant if it is (1) authorized by the Texas long-arm statute, and (2) consistent with federal due-

process guarantees. *Id.* (internal citations omitted). The Texas long-arm statute "reaches as far as the federal constitutional requirements for due process will allow." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023). For example, the Texas long-arm statute permits a trial court to exercise personal jurisdiction over a defendant who "does business in this state," which is defined to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem*, 670 S.W.3d at 346 (quoting TEX. CIV. PRAC. & REM. CODE § 17.042(2)). "However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry is a "forum-by-forum" or "sovereign-by-sovereign" analysis that "examines the nature and extent of the defendant's relationship to the forum to determine whether the defendant is amenable to general or specific jurisdiction." *Volkswagen*, 669 S.W.3d at 412; *see LG Chem*, 670 S.W.3d at 347 ("There are two kinds of personal jurisdiction: 'general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.'").

General jurisdiction, which is not at issue here, "arises when a defendant's contacts with the foreign state are so 'continuous and systematic' that the defendant is 'essentially at home.'" *Volkswagen*, 669 S.W.3d at 412. "Specific jurisdiction is different: It covers defendants less intimately connected with [the forum state], but only as to a narrower class of claims." *Id.* "Courts can exert specific jurisdiction over a nonresident defendant when (1) the defendant engages in 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum [s]tate' and (2) the plaintiff's claims 'arise out of or relate to' those forum contacts." *Id.* at 412–13. Specific jurisdiction involves "a 'claim-by-claim' analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation." *Id.*

A nonresident defendant may challenge the court's personal jurisdiction over him by filing a special appearance. *See* Tex. R. Civ. P. 120a. The plaintiff bears the initial burden to plead sufficient allegations to bring the defendant within the long-arm statute's reach. *LG Chem*, 670 S.W.3d at 346. The burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* "The defendant can meet this burden on either a factual or legal basis." *Id.* To challenge the plaintiff's allegations on a factual basis, the defendant "can present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction," at which point the burden shifts to the plaintiff to "respond with its own evidence supporting its allegations." *Id.* To challenge the plaintiff's allegations

on a legal basis, the defendant "can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction." *Id.*

## III.  ANALYSIS

### A.  Sufficiency of Appellees' Pleadings and Proof

Feeney states his first issue as follows:

Whether Appellees sufficiently pleaded and presented evidence to establish personal jurisdiction against Feeney where jurisdiction was predicated on a single vague act not specific to Feeney, but all Defendants.

We discern Feeney's first issue to challenge: (1) whether appellees' pleadings alleged sufficient jurisdictional facts; and (2) whether the evidence was legally and factually sufficient to support said allegations.

### 1.  Pleadings

At the time of the final hearing on Feeney's special appearance, appellees' live pleading was their second amended petition. In it, appellees alleged the following:

- Defendants Ross, Farahmand, and Feeney were the owners or managers of One Health. Mr. Feeney was the CEO of One Health and represented himself as such to [Morfin].

- In approximately June 2018, Defendants Ross, Farahmand, and Feeney communicated with [Morfin] about One Health's potential acquisition of MedOne's assets. MedOne's assets included MedOne's equity ownership in several companies, located in Dallas-Fort Worth, that provided medical services and those companies' contracts, inventory, and other asserts [*sic*].

- Defendants Ross, Farahmand, and Feeney made those communications to [Morfin] while he was in Texas and Mr. Feeney sent emails to [Morfin] from a [One Health[1]] email address.

- During the course of the negotiations over One Health's potential acquisition, Defendants represented that MedOne had approximately $4 million in EBITDA and provided financial statements containing that number.

- In June 2018, Defendants Ross, Farahmand, and Feeney met with [Morfin] several times in Texas. During those meetings, Defendants, including, specifically, Mr. Feeney, told [Morfin] that One Health had sufficient finances to complete an acquisition of MedOne's assets, and affirmed that the One Health financial statements provided to Plaintiffs were accurate and that One Health had approximately $4 million in EBITDA. Those statements were false. In reality, One Health did not have sufficient finances to complete the acquisition and its financial statements were materially inaccurate, including vastly overstating its EBITDA.

- In short, Defendants, including Mr. Feeney, made false statements and failed to disclose material information to [Morfin], in Texas, about One Health's financial condition.

- Based on those Defendants' representations, MedOne decided to sell its assets to One[ ]Health rather than to other interested parties and entered into the [APA] with One[ ]Health on June 25, 2018.

Based on these facts, appellees asserted a claim for fraudulent inducement against One Health, Ross, Farahmand, and Feeney.

Appellees contend that these allegations were sufficient to meet their pleading burden to bring Feeney within the Texas long-arm statute. We agree. This Court has long held that "a nonresident who travels to Texas and makes statements alleged to

---

[1] The full email address is redacted for privacy, but for the purposes of this analysis, we note that the email address includes Feeney's name as the account holder and One Health's name in the URL portion.

be fraudulent is subject to specific jurisdiction in Texas." *Petrie v. Widby*, 194 S.W.3d 168, 175 (Tex. App.—Dallas 2006, no pet.); *accord Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05–15–00335–CV, 2016 WL 2609314, at *4 (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.), overruled on other grounds by *Saidara*, 633 S.W.3d at 129. Here, appellees pleaded that in June 2018, Feeney and the other individual defendants met with Morfin and falsely represented to him that One Health had sufficient financial resources to complete the acquisition of MedOne's assets. That misrepresentation forms the basis of appellees' fraudulent inducement claim. Accordingly, appellees met their pleading burden by alleging that Feeney "travel[ed] to Texas and ma[de] statements alleged to be fraudulent." *See Petrie*, 194 S.W.3d at 175.

Relying on this Court's en banc decision in *Saidara*, Feeney argues that appellees' pleadings were insufficient because "there is no allegation in [appellees'] petition that Feeney has done business in this state or that he made any representation unique to that of the other Defendants." In other words, Feeney's position is that an allegation that multiple defendants made a "collective" misrepresentation is insufficient to support specific jurisdiction. We disagree.

*Saidara* involved claims for fraud and misappropriation of trade secrets against a foreign defendant alleged to have committed those torts in Texas. *See Saidara*, 633 S.W.3d at 123–24. However, those allegations were found in the plaintiffs' response to Saidara's special appearance and *not* in the plaintiff's petition.

*Id.* at 126. Thus, the issue was whether allegations in a special-appearance response, but not in the plaintiffs' pleadings, are sufficient to meet the pleading burden in the personal-jurisdiction analysis. *See id.* at 126–27. We concluded a plaintiff "must meet its initial burden on a special appearance by pleading, *in its petition*, sufficient allegations to invoke jurisdiction under the Texas long-arm statute." *Id.* at 129 (emphasis in original). Reviewing the plaintiffs' petition, we noted that it contained factual allegations that Saidara visited Texas, and that Saidara committed torts, but not that Saidara committed torts *in Texas*. *See id.* at 131.

*Saidara* does not stand for the proposition that Feeney attributes to it. Nowhere in the opinion did this Court conclude that the same misrepresentation alleged to have been made by multiple defendants cannot satisfy the pleading burden as to one of the defendants in a personal-jurisdiction analysis. Rather, we searched the plaintiffs' live pleading to determine whether there was *any* allegation that Saidara himself committed a tort in Texas. We found none:

> The only allegations of conduct by Saidara in Texas are that he visited Texas in connection with the sale, and he visited Texas on a site visit to Southwest General's facility with Summerset during which Summerset, not Saidara, asked questions. There is no allegation in the petition that Saidara made any misrepresentation during his visits to Texas. There is no allegation in the petition that he was in Texas when he made the misrepresentations in his electronic and telephonic communications. Nor is there any allegation in the petition that Saidara made an in-person misrepresentation during his visit to Texas. Finally, there is no allegation that Saidara was in Texas when he downloaded all the data in the clean room.

–10–

*Id.* at 131 (internal citation omitted). In contrast, appellees here did allege that Feeney made a fraudulent misrepresentation in Texas. That the petition also alleges that the other individual defendants made the same fraudulent misrepresentation does not undermine personal jurisdiction as to Feeney. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 52 (Tex. 2016) (each defendant's contacts with the forum state "must be assessed individually" in personal-jurisdiction analysis).

We conclude that appellees met their burden to plead sufficient jurisdictional facts to support the trial court's exercise of personal jurisdiction over Feeney.

### 2. *Sufficiency of the Evidence*

Feeney next argues that the evidence was legally and factually insufficient to support the trial court's exercise of personal jurisdiction over him. We disagree. Once a plaintiff meets its burden to plead sufficient jurisdictional facts, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *LG Chem*, 670 S.W.3d at 346. One way to do this is to "present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction." *Id.*

Here, the only basis of personal jurisdiction alleged by appellees was that Feeney traveled to Texas in June 2018 and made material misrepresentations regarding One Health's financial ability to purchase MedOne's assets. We must therefore consider whether Feeney's evidence contradicts this factual allegation. At

–11–

the time of the special-appearance hearing, the evidence before the trial court included Feeney's unsworn declaration, in which he testified as follows:

1. I am domiciled in Wisconsin and I am over the age of eighteen (18) years and of sound mind. I am capable of making this Declaration and I am fully competent to testify about the matters stated in this Declaration. I have personal knowledge of each of the facts stated and they are true and correct.

2. I have never lived in Texas.

3. I have not committed any torts in the State of Texas.

4. I do not own any real estate property in the State of Texas.

5. I do not own any bank accounts, telephone numbers, or post office boxes in the State of Texas.

6. I have not entered into any contract with Plaintiffs and I have not contractually consented to jurisdiction in Texas.

7. I am not a member or manager for any of the above-referenced limited liability companies named as parties to this lawsuit.

8. I was never the Chief Executive Officer of Defendant One Health Medical Systems, LLC ("One Health"). I never represented to anyone that I was the Chief Executive Officer of Defendant One Health. It is my understanding that David Ross held the position of Chief Executive Officer. Roger Farahmand hired me as a consultant through his law firm, Langford, Wise & Farahmand, PLLC. I was not privy to nor did I have knowledge of or access to the names and financial information of the entities created by Roger Farahmand, including that of Defendant One Health.

9. I live in a rural community of Wisconsin on a large farm with my two 13-year-old children. When I am not operating the farm, I am dedicated to coaching both of my children's athletic teams and running their scout programs as well as their travel teams. My time is dedicated to my work, children, and farm in Wisconsin such that defending against this case in Texas would be burdensome on me.

In this testimony, Feeney did not expressly dispute that he traveled to Texas in June 2018 and made the statements attributed to him by appellees. The only statement in the declaration that could be interpreted as an implied refutation of appellees' allegation is Paragraph 3, in which Feeney testified that he had not "committed a tort in Texas." However, appellees objected to Paragraph 3, and the trial court sustained the objection. Accordingly, Feeney failed to negate jurisdiction on a factual basis. *See Jani-King*, 2016 WL 2609314, at *5 (nonresident defendants failed to negate jurisdiction on a factual basis where trial court sustained plaintiffs' objection to defendants' declaration testimony that defendants "did not commit a tort, in whole or in part, in Texas").

Because Feeney did not dispute the only factual allegation on which personal jurisdiction was predicated, we need not consider the legal and factual sufficiency of the evidence supporting that factual basis. *See Saidara*, 633 S.W.3d at 126 ("When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction.").

### 3.  *Summary*

We conclude that appellees sufficiently pleaded facts supporting the trial court's exercise of personal jurisdiction over Feeney and that Feeney failed to negate jurisdiction on a factual basis. We overrule Feeney's first issue.

### B. Corporate Capacity and Contractual Avoidance

Feeney states his second issue as follows: "Whether sufficient minimal contacts with Texas exist and were alleged against Feeney in his individual capacity or otherwise to support the exercise of personal jurisdiction." Feeney argues his second issue in two parts: (1) that personal jurisdiction cannot be established where appellees failed to assert that his contacts with Texas were made in his personal capacity; and (2) that the terms of the APA limit appellees' ability to tie their fraudulent-inducement claim to his contacts with Texas. We consider each sub-part in turn.

### 1. Corporate versus Individual Capacity

Feeney first complains that appellees "do not assert Feeney committed any tort personally much less do they assert a single contact with Texas Feeney made individually." Feeney concludes that because appellees alleged only that Feeney made the misrepresentations in his corporate capacity,[2] the trial court could not exercise personal jurisdiction over him in his individual capacity.

We disagree. "[A] corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation." *Walker v. Anderson*, 232 S.W.3d

---

[2]Appellees stated that "Mr. Feeney was the CEO of One Health and represented himself as such to [Morfin]." Feeney disputed the factual allegation in his affidavit, testifying that he "never represented to anyone that [he] was the Chief Executive Officer of Defendant One Health"; that he understood "David Ross held the position of Chief Executive Officer"; and that he was hired as a consultant by Farahmand through the latter's law firm.

899, 918 (Tex. App.—Dallas 2007, no pet.). Additionally, "a corporate employee is not shielded from the exercise of specific jurisdiction as to torts for which the employee may be held individually liable." *Spurgeon v. Empire Petroleum Partners, LLC*, No. 05-18-00783-CV, 2019 WL 2521722, at \*3 (Tex. App.—Dallas June 19, 2019, no pet.) (mem. op.).

The cases on which Feeney relies to reach the opposite conclusion are unavailing. For example, Feeney cites our decision in *Kaye/Bassman* for the proposition that "[a]bsent pleading and proof that an officer's conduct was solely for the officer's benefit and contrary to the interest of the business entity, an officer's 'acts on the corporation's behalf are deemed corporate acts.'" *Kaye/Bassman Intern. Corp. v. Dhanuka*, 418 S.W.3d 352, 359 (Tex. App.—Dallas 2013, no pet.) (quoting *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997)). Feeney argues that appellees' pleadings lack the requisite jurisdictional facts because they failed to plead that Feeney's conduct was solely for his own benefit.

We reject this argument. *Kaye/Bassman* was a tortious-interference case, and Feeney takes the quoted sentence out of the legal framework in which we said it:

> Appellees argue that the tortious interference claims against them cannot arise from or relate to any communications they had with O'Neil after they became HDN directors. Appellees base this argument on Texas law that an agent or officer of a business entity cannot be liable for tortiously interfering with the business entity's contract unless a plaintiff proves that the agent or officer acted in a manner so contrary to the entity's best interests that his or her actions could only have been motivated by personal interest when interfering with the business entity's contract. *Absent pleading and proof that an officer's conduct*

–15–

*was solely for the officer's benefit and contrary to the interest of the business entity, an officer's acts on the corporation's behalf are deemed corporate acts.* Because appellant did not make such allegations or present such proof, appellees contend any alleged jurisdictional contacts in furtherance of tortious interference after the April 2007 acquisition are subject to the fiduciary shield doctrine and do not constitute contacts with Texas in their personal capacities.

*Id.* at 358–59 (emphasis added) (internal citations and quotation marks omitted).

Although the italicized portion of the foregoing quote is an accurate statement of the law, it applies to claims for tortious interference, not fraudulent inducement.[3] *See ACS Investors*, 943 S.W.2d at 432. *Kaye/Bassman* is therefore inapposite.

The two other cases Feeney relies on for this issue are distinguishable on their facts. *See Kumar v. Hill*, No. 01-06-00045-CV, 2007 WL 495512, at *5 (Tex. App.—Houston [1st Dist.] Feb. 15, 2007, no pet.) (mem. op.); *Furtek & Assocs., L.L.C. v. Maxus Healthcare Partners, LLC*, No. 02-15-00309-CV, 2016 WL 1600850, at *5 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op.). In *Kumar* the First Court of Appeals held that allegations in a petition were insufficient to invoke the trial court's exercise of personal jurisdiction where the plaintiff's allegations of tortious conduct against the defendant were based on conspiracy or agency principles. *See Kumar*, 2007 WL 495512, at *5. In contrast, appellees do not contend that Feeney committed fraud in Texas through an agent or conspired with a

---

[3] The italicized quote is an exception to the rule that a party cannot interfere with its own contracts. Generally, a claim for tortious interference can be brought only against a stranger to a contract. *Holloway v. Skinner*, 898 S.W.2d 793, 794 (Tex. 1995). A corporate officer is the conduit through which the corporation acts. *See id.* at 795. Thus, a corporate officer cannot be held liable for interfering with the corporation's contracts, except when the officer is acting purely out of self-interest. *See id.* This is the point being made by the language from *Kaye/Bassman* on which Feeney relies.

Texas resident to commit fraud; they allege that Feeney traveled to Texas and committed fraud himself.

In *Furtek & Associates*, the Second Court of Appeals considered the alleged conduct of two defendants. *Furtek & Assocs.*, 2016 WL 1600850, at *5. The first, Furtek, was alleged to have made certain misrepresentations during a chance meeting in Texas and in phone calls and emails made from outside Texas. The second, Yanchik, was alleged to have travelled to Texas on three separate trips. The court held that the phone calls and emails were insufficient to establish personal jurisdiction because purposeful availment cannot depend on the "fortuitous location of the Texas resident when the nonresident defendant communicates with them." *Id.* (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005); and *Bryan v. Gordon*, 384 S.W.3d 908, 917 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). The court further held that the meeting was insufficient to establish personal jurisdiction because it happened coincidentally during Furtek's trip to Texas for a different purpose. *See id.* (citing *Michiana*, 168 S.W.3d at 785). As to Yanchik, the court held that her trips to Texas were not related to the transaction out of which the claims arose and therefore could be factors to consider for general, but not specific, jurisdiction. *See id.* at *6. Here, however, appellees allege that Feeney traveled to Texas, along (or to meet) with Morfin, to negotiate the sale of MedOne's assets to One Health, and that the misrepresentations about One Health's ability to complete the acquisition were made during the meeting. Thus, unlike Furtek and

–17–

Yanchik, the alleged meeting in this case was not a fortuitous occurrence that Feeney happened to attend while he was in Texas for some other purpose.

### 2. Contractual Avoidance

Feeney next argues that the choice-of-law and merger clauses of the APA preclude personal jurisdiction in Texas. Appellees respond that Feeney waived this argument because he did not raise it in the trial court. We agree with appellees.

To preserve a complaint for appeal, a party must show that it was raised in the trial court "by a timely request, objection, or motion" stating the grounds for the relief sought. *See* TEX. R. APP. P. 33.1(a)(1). Feeney did not raise this complaint in the trial court and cannot raise it for the first time on appeal. *See Shen v. Chen Zhao Hua*, No. 05-17-00280-CV, 2018 WL 1407099, at *3 (Tex. App.—Dallas Mar. 21, 2018, no pet.) (mem. op.) (issue related to personal jurisdiction waived where not preserved in the trial court); *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 667 (Tex. App.—Dallas 2014, pet. denied) (mem. op.) (same).

### 3. Summary

We conclude that appellees' second amended petition alleged and provided evidence that Feeney committed a tort in Texas and that, irrespective of whether he did so in his corporate or personal capacity, it was sufficient to establish Feeney's minimum contacts with Texas. We further conclude that Feeney's second argument relating to the APA was not preserved for appeal.

We overrule Feeney's second issue.

## C.      Fiduciary-Shield Doctrine

In his third issue, Feeney asks us to consider "[w]hether the fiduciary shield doctrine precludes personal jurisdiction over Feeney when the only contacts with Texas alleged were in a corporate capacity." Feeney argues that, to the extent he was a principal of One Health, the fiduciary-shield doctrine precludes the trial court's exercise of personal jurisdiction over him. Appellees respond that the fiduciary-shield doctrine does not apply where the defendant is alleged to have committed a tort in the course of employment. We agree with appellees.

"A long-standing principle of Texas law is that ordinarily a corporate agent is not personally liable in an action on a contract made by him for the benefit of his corporate principal." *Stull v. LaPlant*, 411 S.W.3d 129, 134 (Tex. App.—Dallas 2013, no pet.), overruled on other grounds by *Saidara*, 633 S.W.3d at 129. Thus, the fiduciary-shield doctrine prevents a trial court from exercising personal jurisdiction over an agent of a corporation whose sole contact with Texas results from transacting the corporate principal's business in the state. *Id.* at 134–35 (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)). However, the corporate agent "can be held liable for committing a tort or wrong while engaged in the business of the corporate principal based on the agent's personal acts." *Id.* Thus, "one frequently stated exception to the fiduciary shield doctrine is that it does not protect an officer or employee of a business entity from liability for torts the individual is alleged to

–19–

have committed while conducting the business of his employer because individuals are liable for the torts they commit." *Id.*

Here, appellees alleged that Feeney was a principal of One Health and travelled to Texas where he fraudulently induced MedOne into the APA by misrepresenting One Health's ability to perform under that contract. Because Feeney, personally, was "alleged to have committed a tort while conducting the business of his employer," we conclude that the fiduciary-shield doctrine does not apply in this case.

We overrule Feeney's third issue.

### D.    Due Process

In his fourth issue, Feeney contends that "[s]ufficient minimal contacts do not exist and personal jurisdiction over Feeney does not comport with traditional notions of fair play and substantial justice." Regarding the minimum-contacts analysis, Feeney argues that appellees' allegation that Feeney misrepresented One Health's financial status is insufficient to meet the minimum-contacts test because: (1) appellees "do not allege that Feeney was seeking any personal benefit, advantage or profit through the contact"; (2) "the allegations of tortious contact by Feeney are overly vague, conclusory, and in dispute"; and (3) "the single alleged contact is attenuated and fortuitous." We address each assertion in turn.

### 1. *Benefits*

Feeney argues that the trial court lacked personal jurisdiction because appellees failed to allege that "Feeney sought to personally 'benefit, advantage, or profit' from the contact with Texas." This argument is directed at the third factor in the purposeful-availment inquiry. For a Texas court to exercise specific jurisdiction over a nonresident defendant, (1) the defendant must purposefully avail itself of doing business in Texas and (2) the defendant's liability must arise out of or be related to an activity it conducted within Texas. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007). The test for establishing purposeful availment has three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Old Republic*, 549 S.W.3d at 559 (quoting *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)). The benefit factor "is premised on implied consent: a nonresident consents to suit by invoking the benefits and protections of a forum's laws." *Moncrief Oil*, 414 S.W.3d at 154.

Appellees argue that the allegations in their second amended petition are sufficient to show that Feeney benefited from his contacts with Texas. We agree. Appellees alleged that Feeney traveled to Texas in June 2018 to negotiate the purchase of MedOne's assets by One Health, which was headquartered in Dallas.

During one of those meetings, Feeney allegedly made a misrepresentation as to One Health's financial capabilities that induced MedOne to enter into the APA. Appellees further alleged that once the APA was signed, the defendants "managed the assets, all of which were medical companies located in Dallas-Fort Worth[.]" With respect to Feeney, appellees alleged that he "actively managed One Health's assets, and was frequently in Dallas to do so." Although Feeney did testify in his declaration that he was a consultant and not One Health's CEO, he did not dispute these allegations. The trial court could have reasonably concluded that Feeney was compensated for his work on behalf of One Health.

We conclude that appellees sufficiently alleged that Feeney benefited from his contacts with Texas and overrule the first assertion under Feeney's fourth issue.

### 2. *Procedural and Evidentiary Defects*

Feeney next advances a series of arguments related to defects in the jurisdictional allegations and supporting evidence.

First, Feeney argues that appellees' allegation of tortious conduct by Feeney, and the evidence supporting it, was conclusory. We disagree. A conclusory statement is one that "does not provide the underlying facts to support the conclusion" and is thus is not "susceptible to being readily controverted." *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.). Here, appellees alleged (and supported their allegations with Morfin's unsworn declaration) that Feeney traveled to Texas in June 2018, met with Morfin to negotiate the APA, and

–22–

made a specific misrepresentation regarding One Health's financial capability to perform under the APA. These allegations are factual and could have been readily controverted by Feeney. They are therefore not conclusory.

Feeney next argues that Morfin's declaration cannot support specific jurisdiction because, although Morfin testified that Feeney made a false statement, he did not testify that the statement was material or that MedOne relied on it and was injured as a result, which are essential elements of a claim for fraudulent inducement. We reject this argument. The personal-jurisdiction analysis requires courts to consider, where appropriate, the evidence of the foreign defendant's contacts with the forum state, not the merits of the claim against the defendant. *See Michiana*, 168 S.W.3d 777, 790. As the supreme court observed in *Michiana*:

> Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter.

*Id.* Here, the factual allegations and the evidence supporting them were sufficient to show that Feeney had the requisite minimum contacts with Texas; appellees were not required to also provide evidence of each element of their fraudulent-inducement claim.

Feeney further argues that the allegations in appellees' pleadings were inconsistent with their evidence. Specifically, Feeney claims that appellees "alleged all Defendants made the exact same representation, but [Morfin's declaration]

–23–

alleged that same representation was only made by Feeney." We disagree. Morfin's declaration did not state that the representation as to One Health's financial ability to perform under the APA was made "only" by Feeney. Rather, Morfin's Declaration, attached to appellees' response to Feeney's special appearance, stated:

> During several meetings with Mr. Feeney and Mr. Ross in June 2018 in Texas, Mr. Feeney told me that One Health had sufficient finances to complete an acquisition of MedOne's assets. Specifically, Mr. Feeney affirmed that the One Health financial statements provided to me were accurate and that One Health had approximately $4 million in EBITDA. Those statements were false.

Appellees presented evidence in support of the jurisdictional challenge by Feeney. While the declaration may be silent as to statements made by the other defendants, it is not contrary to or different from the jurisdictional allegations in the petition.

We overrule Feeney's arguments related to defects in the jurisdictional allegations and supporting evidence.

### 3. Attenuated and Fortuitous Contacts

Feeney claims that his single alleged contact with Texas was too attenuated and fortuitous to support the trial court's exercise of personal jurisdiction. Feeney's brief contains this statement only in the introductory paragraph of his fourth issue. There are no arguments, record citations, or citations to relevant authority in support of this claim. *Cf.* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We therefore decline to address this argument due to briefing waiver.

–24–

### 4.    *Fair Play and Substantial Justice*

Finally, Feeney argues that the trial court's exercise of personal jurisdiction over him offends traditional notions of fair play and substantial justice.

"In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154. "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice. *Id.* at 154–55. In this analysis, we consider the following factors: (1) the defendant's burden; (2) the forum state's interests in adjudicating the dispute; (3) the plaintiff's interest in securing convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of disputes; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).

Regarding the first factor, the occasional trips Feeney would have to travel for this litigation are not overly burdensome. *Moncrief Oil*, 414 S.W.3d at 155. As the supreme court has explained, "[d]istance alone cannot ordinarily defeat jurisdiction" because "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Id.* (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010)). As to the second factor, Texas "has an especial interest in exercising judicial

–25–

jurisdiction over those who commit torts within its territory." *TV Azteca*, 490 S.W.3d at 56 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984)). Regarding the third and fourth factors, appellees' ability to secure convenient and effective relief and the interstate judicial system's efficiency would both be hindered by being forced to maintain one suit in Texas and another suit, arising from the same operative facts, in Wisconsin. *See Kelly Inv., Inc. v. Basic Capital Mgmt., Inc.*, 85 S.W.3d 371, 376 (Tex. App.—Dallas 2002, no pet.) (case involving multiple defendants would be "most efficiently resolved in a single forum"). Finally, the shared interests of Texas and Wisconsin in furthering substantive social policy are best served by Texas's exercise of jurisdiction over Feeney because the operative facts giving rise to appellees' fraudulent-inducement claims occurred in Texas. *See id.* at 377 ("To permit an out-of-state entity to acquire promissory notes that are the subject of known, pending litigation in a state court without subjecting itself to the exercise of specific jurisdiction of the forum state with respect to that litigation would invite parties to make such transfers as a shield to avoid the efficacy of the pending litigation.").

We conclude that all five factors weigh in favor of the trial court's exercise of personal jurisdiction over Feeney.

### 5. *Summary*

We conclude that appellees sufficiently alleged that Feeney had minimal contacts with Texas and the trial court's exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice.

We overrule Feeney's fourth issue.

## CONCLUSION

We affirm the trial court's order denying Feeney's special appearance.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
221375F.P05                          JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN FEENEY, Appellant

No. 05-22-01375-CV      V.

MORFIN CAPITAL GROUP LLC
AND MEDONE TEXAS MSO,
LLC, Appellees

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-07016.
Opinion delivered by Justice
Goldstein. Justices Garcia and Miskel
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees MORFIN CAPITAL GROUP LLC AND MEDONE TEXAS MSO, LLC recover their costs of this appeal from appellant JOHN FEENEY.

Judgment entered this 20th day of August 2024.